UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SCORES HOLDING COMPANY, INC. and
SCORES LICENSING CORP.,

       Plaintiffs,

  v.

SCMD LLC,

       Defendant.

<u>ORDER</u>

18 Civ. 11364 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

    In this diversity action, Plaintiff Scores Holding Company, Inc. has sued Defendant SCMD LLC for breach of contract.[1] (Am. Cmplt. (Dkt. No. 15) ¶¶ 17-29) Defendant has moved to dismiss the Amended Complaint for failure to prosecute under Fed. R. Civ. P. 41(b), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Defendant's motion will be denied.

## I. BACKGROUND

### A. Facts

    Approximately 30 years ago, "Plaintiff's predecessor-in-interest founded a gentlemen's club in New York under the name SCORES." (Am. Cmplt. (Dkt. No. 15) ¶ 7) Plaintiff "is the owner of the trademark SCORES and various composite trademarks." (Id. ¶ 8)

    On March 31, 2003, Plaintiff entered into a Master License Agreement with non-party Entertainment Management Services, Inc. ("EMS"), which gave EMS the exclusive right to sublicense the SCORES mark to other gentlemen's clubs around the country. (Id. ¶¶ 8-9) On February 27, 2004, non-party Club 2000 Eastern Avenue, Inc. ("Club 2000") entered into a

---

[1] The Complaint also names Scores Licensing Corp. as a plaintiff, but the Amended Complaint makes no reference to this entity. (Cmplt. (Dkt. No. 1-1); Am. Cmplt. (Dkt. No. 15))

Sublicense Agreement with EMS to use the SCORES name at an "adult entertainment club" in Baltimore, Maryland.  (Id. ¶ 10)

This Sublicense Agreement provides as follows:

### SUBLICENSE AGREEMENT

THIS AGREEMENT made and entered into this 27th day of February, 2004, by and between ENTERTAINMENT MANAGEMENT SERVICES, INC. . . . ("Licensor") and CLUB 2000 EASTERN AVENUE, INC. ("Licensee").

### WITNESSETH

WHEREAS, LICENSOR is the exclusive licensee of the SCORES trademarks . . . ; and

WHEREAS, Licensee is the owner and operator of an adult-entertainment night club located at 2000 Eastern Avenue, Baltimore, Maryland (the "Location") which desires to conduct business under the name "Scores Baltimore" (the "Business") and

WHEREAS, Licensee will hereby receive the right and license to use the Scores Trademarks in connection with the operation of the Business, and the sale of certain merchandise, for the Term (as defined below);

NOW, THEREFORE, . . . the parties agree as follows:

1. LICENSE GRANT.

(a)  . . . Licensor hereby grants to Licensee and Licensee hereby accepts from Licensor, a . . . license to use the Scores Trademarks during the Term. . . .

. . .

2.  ROYALTIES:

(a)  . . . Licensee shall pay Licensor royalties (the "Royalties") for the license of the Scores Trademark hereunder as follows:

(i)  For each week during the Royalty Period Licensee's weekly Gross Revenue . . . is equal to or less than $10,000, Licensee shall pay as Royalties to Licensor the sum of $0.00; provided, however, that if Licensee's weekly Gross Revenue does not exceed $10,000 for four (4) consecutive weeks, Licensor may terminate this Agreement in its sole discretion.

(ii)  For each week during the Royalty Period Licensee's weekly Gross Revenue (as that term is defined below) is between $10,001 and $20,000, inclusive, Licensee shall pay as Royalties to Licensor the sum of $1,000.00.

(iii)  For each week during the Royalty Period Licensee's weekly Gross Revenue (as that term is defined below) is greater than $20,000, Licensee shall pay as Royalties to Licensor a sum equal to four and 99/100 percent (4.99%) of such week's Gross Revenue.

. . . .

10. TERMINATION.

(a)  In case either party fails to perform under or commits or allows to be committed a breach of any of the several covenants and conditions herein contained, the other party shall notify such party in writing of such failure or default and such party shall then have the right to remedy such failure or default within thirty (30) days.  If the default has not been cured within said thirty (30) days of notice to the defaulting party, then the aggrieved party may terminate this Agreement immediately by a further notice in writing.  If Licensor shall send notice of default to Licensee based on a failure to pay royalties, then Licensee shall cure such default within ten (10) days of notice.

. . . .

11.  TERM.  Subject to Paragraph 10, the Term of this Agreement shall commence on the date first written above and will continue for a period of ten (10) years. . . .

. . .

14.  NOTICES.  All notices, whenever required in this Agreement, will be in writing and sent by certified mail, return receipt requested to the addresses set forth above. . . .

15.  CONTROLLING LAW.  This Agreement shall be construed in accordance with the laws of the State of New York, United States of America and jurisdiction over the parties and subject matter over any controversy arising hereunder shall be in the Courts of the State of New York, County of York or the Federal courts therein.  Both parties hereby irrevocably consent to said jurisdiction and venue.

(Sublicense Agreement (Dkt. No. 15-1))[2]

---

[2]  As discussed below, the Term is 10 years from the date on which the Sublicense Agreement was executed (i.e., February 27, 2004).  (Sublicense Agreement (Dkt. No. 15-1) § 11)

On September 28, 2004, EMS, Club 2000, and Defendant SCMD LLC executed an agreement pursuant to which Defendant SCMD LLC was assigned Club 2000's rights under the Sublicense Agreement. (Dkt. No. 15-2) "Amendment No. 1 to Sublicense Agreement dated February 27, 2004" – states as follows:

> The sublicense agreement between ENTERTAINMENT MANAGEMENT SERVICES, INC. and CLUB 2000 EASTERN AVENUE, INC. to which this Amendment No. 1 is attached (the "Sublicense") is assigned in kind from CLUB 2000 EASTERN AVENUE, INC. TO SCMD LLC. . . .

(Id.)

On January 27, 2009, Plaintiff terminated its Master License Agreement with EMS and transferred all rights associated with the SCORES mark to itself. (Am. Cmplt. (Dkt. No. 15) ¶ 15)

Although Plaintiff and Defendant did not renew the Sublicense Agreement after the 10-year term expired (see Sublicense Agreement (Dkt. No. 15-1) § 11), they continued to comply with its terms, "manifesting their mutual intent to continue an ongoing business relationship as before." (Am. Cmplt. (Dkt. No. 15) ¶ 16) Indeed, Defendant paid royalties to Plaintiff pursuant to the terms of the Sublicense Agreement through July 2017. (Id. ¶¶ 16, 19)

Defendant made no royalty payments after July 2017, however, even though it continued to use the SCORES name until September 2018. (Id. ¶¶ 19, 22-23) Plaintiff estimates that Defendant owes at least $160,000.00 in unpaid royalties. (Id. ¶ 22)

### B. Procedural History

The Complaint was filed on October 10, 2018, in Supreme Court of the State of New York, New York County. (Cmplt. (Dkt. No. 1-1)) On December 5, 2018 – before the Complaint was served – Defendant removed the case to this District. (Notice of Removal (Dkt.

No. 1))  With Defendant's consent (Dkt. No. 12), Plaintiff filed an Amended Complaint on February 20, 2019.  (Am. Cmplt. (Dkt. No. 15))

On March 8, 2019, Defendant filed a pre-motion letter, seeking permission to file a motion to dismiss.  (Def. Ltr. (Dkt. No. 16))  Pursuant to Rule IV(A) of this Court's Individual Rules, Plaintiff's response to Defendant's letter was due on March 13, 2019.  Plaintiff did not respond to Defendant's letter.  On November 6, 2019, this Court set a briefing schedule for Defendant's motion to dismiss.  (Dkt. No. 17)

On December 2, 2019, Defendant moved to dismiss the Amended Complaint for failure to prosecute under Fed. R. Civ. P. 41(b), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (Def. Br. (Dkt. No. 19))  Defendant argues that Plaintiff – in not responding to Defendant's pre-motion letter – has failed to prosecute its action.  (Id. at 4)  Defendant further contends that the Amended Complaint fails to state a claim because (1) Plaintiff did not comply with the Sublicense Agreement's notice-and-cure provision before commencing this lawsuit; and (2) the Sublicense Agreement had expired by the time Defendant allegedly breached that agreement.  (Id. at 8)

## II. DISCUSSION

### A. Failure to Prosecute

#### 1. Applicable Law

Federal Rule of Civil Procedure 41 provides that an action may be involuntarily dismissed "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules] or a court order."  Fed. R. Civ. P. 41(b).  "A district court considering a Rule 41(b) dismissal must weigh five factors":

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal,

> (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

Baptiste v. Sommers, 768 F.3d 212, 216 (2d Cir. 2014) (quoting Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996)). "No single factor is generally dispositive." Id. (citing Nita v. Connecticut Dep't of Envtl. Prot., 16 F.3d 482, 485 (2d Cir. 1994)). Involuntary dismissal is "one of the harshest sanctions at a trial court's disposal, since it usually extinguishes the plaintiff's cause of action and denies plaintiff his day in court." U.S. ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 251 (2d Cir. 2004). Accordingly, that sanction "is reserved for use only in the most extreme circumstances." Id.

### B. Analysis

The factors set forth above weigh against dismissal here. "The first factor . . . breaks down into two parts: (1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration." Id. at 255 (citing Martens v. Thomann, 273 F.3d 159, 180 (2d Cir. 2001)). Plaintiff's failure to respond to Defendant's pre-motion letter likely caused some modest delay, but Defendant should have alerted the Court that its application was still pending 90 days after the pre-motion letter was filed. See Individual Rule IV(h) ("If a motion is not decided within 90 days of the time it is fully submitted or of argument, counsel for the movant shall submit a letter to call this fact to the Court's attention."). Acknowledging that eight months passed between Defendant's pre-motion letter and the briefing schedule issued by the Court, responsibility for that delay is not attributable solely to Plaintiff. Accordingly, this factor weighs against dismissal. See Lego A/S v. Best-Lock Constr. Toys, Inc., 319 F.R.D. 440, 453 (D. Conn. 2017) (denying motion to dismiss for failure to prosecute

6

where delay was "lengthy" but was attributable to "the conduct of both parties and of the Court").

As to the second factor, "[t]he question . . . is whether [Plaintiff] received notice 'that further delays would result in dismissal.'"  U.S. ex rel. Drake, 375 F.3d at 255 (quoting Martens, 273 F.3d at 180).  Here, Plaintiff received no notice that its case might be dismissed.  Thus, this factor weighs against dismissal.  See Galicia v. Tobiko Rest., Inc., No. 2:16-CV-4074 (ADS) (SIL), 2020 WL 1166451, at *3 (E.D.N.Y. Mar. 11, 2020) (denying motion to dismiss for failure to prosecute where "Plaintiff had no notice that . . . dismissal was forthcoming").

As to the third factor, Defendant represents that it is defunct and "has been forced to maintain books and records due to this action."  (Def. Br. (Dkt. No. 19) at 5)  Defendant also suggests that its employees may no longer be available as witnesses.  (Id.)  These vague representations are not sufficient to demonstrate prejudice.  Because Defendant has not identified any destroyed evidence or unavailable witnesses, this factor does not favor dismissal.  See Baptiste, 768 F.3d at 218 (rejecting argument that delay "increased the likelihood that evidence . . . may be unavailable," given lack of evidentiary support) (internal quotation marks omitted); Jefferson v. Koenig, No. CV-15-544 (JS) (AYS), 2017 WL 9485718, at *5 (E.D.N.Y. Feb. 10, 2017) ("Defendants argue that they have been prejudiced by the 'passage of time,' which affects their witnesses' ability to 'recall events from years ago clearly or accurately.' . . . The Court finds such argument to be general in nature, and, as such, unpersuasive."); see also Galicia, 2020 WL 1166451, at *4 ("The Defendants' contention as to the loss of evidence is equally unavailing, because the Defendants have had notice of the Plaintiff's claims since he filed the complaint.").

As to the fourth and fifth factors, this Court "has the power to set and enforce reasonable deadlines for discovery and motion practice" to prevent further delay. Baptiste, 768 F.3d at 219. Given that Defendant presents "no evidence that the Plaintiff ha[s] consciously delayed proceedings," and Plaintiff "resumed prosecuting the case" immediately after Defendant's motion to dismiss was filed, Galicia, 2020 WL 1166451, at *4, dismissal is not appropriate. For these reasons, Defendant's motion to dismiss for failure to prosecute will be denied.

    **B.**    **Whether the Amended Complaint Adequately Pleads a Breach of Contract Claim**

        **1.**    **Rule 12(b)(6) Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

Allegations that "are no more than conclusions[] are not entitled to the assumption of truth," however. Iqbal, 556 U.S. at 679. A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" id. at 678, offers "'a formulaic recitation of the elements of a cause of action,'" id., and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). While legal conclusions "can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).  And "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

"On a motion to dismiss for breach of contract, courts look . . . at the contract itself, which by definition is integral to the complaint." Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (citing Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n, 655 F.3d 136, 141 (2d Cir. 2011)).

2.   **Analysis**

Defendant argues that Plaintiff's breach of contract claim fails, because Plaintiff has not complied with Section 10 of the Sublicense Agreement, which states:

> In case either party fails to perform under or commits or allows to be committed a breach of any of the several covenants and conditions herein contained, the other party shall notify such party in writing of such failure or default and such party shall then have the right to remedy such failure or default within thirty (30) days. If the default has not been cured within said thirty (30) days of notice to the defaulting party, then the aggrieved party may terminate this Agreement immediately by a further notice in writing.

(Sublicense Agreement (Dkt. No. 15-1) § 10(a); see Def. Br. (Dkt. No. 19) at 8)

Defendant further contends that Plaintiff has not complied with Section 14 of the Sublicense Agreement, which requires that any notice transmitted under Section 10

be "sent by certified mail, return receipt requested." (Sublicense Agreement (Dkt. No. 15-1) § 14; see Def. Br. (Dkt. No. 19) at 8)

"Under New York law, if a contract explicitly states that notice and an opportunity to cure are conditions precedent to bringing or maintaining a claim, courts will enforce that agreement."[3] Rojas v. Don King Prods., Inc., No. 11 CIV. 8468 KBF, 2012 WL 760336, at *2 (S.D.N.Y. Mar. 6, 2012) (collecting cases). However, "it must clearly appear from the agreement itself that the parties intended a provision to operate as a condition precedent. If the language is in any way ambiguous, the law does not favor a construction which creates a condition precedent.'" Mahoney v. Sony Music Entm't, No. 12 CIV. 5045 RJS AJP, 2013 WL 491526, at *6 (S.D.N.Y. Feb. 11, 2013) (quoting Kass v. Kass, 235 A.D.2d 150, 159 (2d Dep't 1997), aff'd, 91 N.Y.2d 554 (1998)).

Section 10 of the Sublease Agreement provides that where a party breaches the Sublicense Agreement, the non-breaching party may terminate the agreement after notifying the breaching party of its breach and giving that party 30 days to cure. (Sublicense Agreement (Dkt. No. 15-1) § 10(a)) But the Sublicense Agreement does not state that compliance with Section 10 is a prerequisite to suit. Accordingly, Defendant's argument that Plaintiff failed to satisfy a prerequisite to filing suit is not persuasive. See, e.g., Spanski Enterprises, Inc. v. Telewizja Polska, S.A., No. 10 CIV. 4933 ALC GWG, 2013 WL 81263, at *12 (S.D.N.Y. Jan. 8, 2013) ("[T]he Contract requires notice and opportunity to cure when a party seeks termination. There is no language making such action a condition precedent to filing a []claim."); IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 403 (S.D.N.Y. 2009) ("[A] notice and cure provision like the one here provides a party with a means of curing a default which would

---

[3] New York law governs the parties' dispute. (See Sublicense Agreement (Dkt. No. 15-1) § 15)

otherwise allow the non-defaulting party to terminate the agreement; it does not constitute a condition precedent to a party's right to sue."); see also EDF Renewable Dev.. Inc. v. Cty. of Suffolk, No. CV 13-3361, 2016 WL 6804939, at *14-15 (E.D.N.Y. Nov. 17, 2016), aff'd, 693 F. App'x 42 (2d Cir. 2017) ("[Defendant] construes Section 27 as imposing a condition precedent for commencement of a breach of contract lawsuit. [Plaintiff], on the other hand, argues that Section 27 creates no such condition, and instead sets forth only a set of circumstances under which [plaintiff] could terminate the . . . Agreement based upon the [defendant's] default. The Court agrees with [plaintiff's] interpretation. . . . Section 27 does not state that notice of default and a 30 day opportunity to cure such default must pass prior to institution of a lawsuit.").

Defendant further contends that Plaintiff's breach claim must be dismissed because that claim is "based on a contract that expired in 2014." (Def. Br. (Dkt. No. 19) at 1)

As discussed above, the Sublicense Agreement provides for a ten-year term that expired in 2014. (Sublicense Agreement (Dkt. No. 15-1) § 11) According to the Amended Complaint, however, "Defendant continued to use the SCORES name and trademark and pay royalties pursuant to the Sublicense" Agreement until July 2017 – well after the Sublicense Agreement expired. (Am. Cmplt. (Dkt. No. 15) ¶¶ 16, 19; see also id. ¶ 16 ("Even though the Sublicense was not renewed in writing . . . , each party continued to perform under the same terms, manifesting their mutual intent to continue an ongoing business relationship as before."))

"Under New York law, 'a contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct.'" Leibowitz v. Cornell University, 584 F.3d 487, 506-07 (2d Cir. 2009) (quoting Jemzura v. Jemzura, 36 N.Y.2d 496, 503-04 (1975)). "'[T]he parties' conduct after the expiration of [a] written contract, including

11

[one party's] continued rendition of services, [the other's] acceptance of those services and . . . payment . . . in accordance with the terms of the written contract' can establish 'a contract implied in fact with substantially the same terms and conditions as embodied in the expired written contract.'" Andrews v. Sotheby Intern. Realty, Inc., No. 12 Civ. 8824, 2014 WL 626968, *8 (S.D.N.Y. Feb. 18, 2014) (quoting Watts v. Columbia Artists Mgmt. Inc., 188 A.D.2d 799 (3rd Dep't 1992)); see also Martin v. Campanaro, 156 F.2d 127, 129 (2d Cir. 1946) ("When an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old.").

According to the Amended Complaint, even after the ten-year term of the Sublicense Agreement had expired, Defendant continued to use the SCORES mark and continued to pay royalties for the right to use the mark. (Am Cmplt. (Dkt. No. 15) ¶¶ 16, 19) Accepting these allegations as true, it is plausible that the parties "mutually assented to a new contract containing the same provisions as the old." Martin, 156 F.2d at 129. Defendant's motion to dismiss for failure to state a claim – premised on the argument that the Amended Complaint does not plead the existence of a contract – will therefore be denied. See Local Union 813, Int'l Bhd. of Teamsters v. Waste Mgmt. of N.Y., LLC, 469 F.Supp.2d 80, 84-85 (E.D.N.Y.2007) ("'Where, as here, after the expiration of a contract fixing the reciprocal rights and obligations of the parties, they continue to do business together, the conduct of the parties may at times permit, or even constrain, a finding that the parties impliedly agreed that their rights and obligations in connection with such business should continue to be measured as provided in the old contract.'") (quoting N.Y. Tel. Co. v. Jamestown Tel. Corp., 282 N.Y. 365, 371 (1940)); see also Curreri v. Heritage Prop. Inv. Trust, Inc., 48 A.D.3d 505 (2d Dep't 2008) ("[D]espite the

fact the original contract [between the parties] had expired, their conduct evidenced their mutual assent to a new contract embracing the same provisions and terms as their prior contract.").

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss (Dkt. No. 19) is denied. Plaintiff's cross-motion for leave to amend (Dkt. No. 22) is denied as moot.[4] The Clerk of Court is directed to terminate the motions.

The Court will conduct a case management conference on **September 3, 2020 at 10:00 a.m.**  By **August 27, 2020**, the parties will file a joint status letter and a proposed case management plan. A model case management plan is available on the Court's website (https://nysd.uscourts.gov/hon-paul-g-gardephe).

Dated: New York, New York
       August 14, 2020

SO ORDERED.

Paul G. Gardephe
United States District Judge

---

[4] Plaintiff cross-moved for leave to amend to the extent that the Court concluded that its "breach of contract claim should be dismissed." (Pltf. Opp. (Dkt. No. 24) at 12)